## PAUL BREMOND v. JAMES B. McLEAN.

1. MISREPRESENTATION—FRAUD.—No action lies for false representations in reference to a matter the truth or falsehood of which cannot affect the plaintiff. A petition in an action for deceit should allege damage from the misrepresentation declared on.

2. LIMITATION—PLEADING.—Where plaintiff seeks to avoid limitation on the ground of his ignorance of the deceit practiced upon him, the petition should disclose the facts of his recent discovery or want of means of knowledge, so that their sufficiency may be passed upon by the court. Mere general allegations that the fraud was not or could have been discovered are insufficient on demurrer.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The petition with amendments in this cause presents a suit by James B. McLean against Paul Bremond for the sum of $1,417.23, and ten per cent. interest thereon from August 1, 1861, and, as ground of action, alleges substantially that during the years 1858 and 1859 the defendant, Paul Bremond, was engaged in carrying out a contract of construction with the Houston and Texas Central Railway Company, and gave employment to the plaintiff as a subcontractor.

That plaintiff McLean, in pursuance thereof, rendered service to defendant Bremond, and performed for him labor of great value, and that in payment of a portion of the indebtedness thus incurred the said Bremond delivered to plaintiff a promissory note, set forth in the petition, as follows:

"$1,417.23.                    WHEELOCK, *August* 1, 1858.

"Three years after date I promise to pay to the order of myself fourteen hundred and seventeen $\frac{23}{100}$ dollars, value received, payable at the office of Houston and Texas Central Railroad, with ten per cent. interest after maturity.

I. C. SPENCE."

Which said note is indorsed "I. C. Spence."

That at the delivery of said note the plaintiff McLean requested defendant Bremond to indorse it; this the defendant refused to do, but did then and there falsely, fraudulently, and deceitfully, with intent to defraud, cheat, deceive, and injure plaintiff, represent and declare to plaintiff and assure him that the said promissory note was and is known as and called a railroad-stock note, and that said note had been given by said Spence to said Houston and Texas Central Railroad Company as and for subscription by said Spence to the capital stock of said company, upon the payment of which its equivalent in value in the stock of said railroad

company would be issued, which rendered said note of great value, and that said defendant well knew at the time that all these representations, declarations, and assurances so made by him were false and untrue in fact.

That plaintiff relied upon the truth of these representations, and, trusting in defendant's honesty, integrity, and good faith, accepted and received said promissory note as a stock note for stock in the Houston and Texas Central Railway in perfect good faith in settlement of said portion of defendant's indebtedness to him, to wit, the sum of $1,417,23, and was influenced and induced thereto solely by said representations and assurances, and that the same were made by defendant to give value to said promissory note. The petition further discloses that it had but recently, to wit, on the —— day of May, 1871, come to the knowledge of plaintiff that said note is not in fact and in truth a railroad-stock note, and is in no manner connected with the Houston and Texas Central Railroad, and that all of said defendant's representations in regard to the same are and were entirely false, and that plaintiff continued ignorant of the falsity of the same, and could not have discovered by reasonable diligence that the same were false and had been fraudulently made by defendant to deceive plaintiff, and that said note was not in fact and in truth a railroad-stock note, until the aforesaid —— day of May, 1871; and further, by way of replication, alleged absence from the State of Texas; that suit was filed on said note against said Spence to the first term of District Court after maturity of same, and all diligence pursued by plaintiff, but that Spence, at that time and ever after, was insolvent, and that said note is worthless and uncollectable.

The petition was filed July 20, 1872.

The defendant filed general demurrer, general denial, and pleaded the statute of limitations, laches in the assertion of plaintiff's claim, and long acquiescence by plaintiff in the alleged misrepresentations of defendant, and further

denied the charges of fraud and misrepresentation, and pleaded "not guilty," and denied his absence from the State sufficient length of time to save the bar of the statute of limitations.

Demurrer was overruled; verdict and judgment for the amount of the note. Motion for new trial was refused, and Bremond appealed.

*Crosby & Hill,* for appellant, cited McDonald *v.* McGuire, 8 Tex., 370; Ford *v.* Clements, 13 Tex., 597; Lewis *v.* Houston, 11 Tex., 647; Smith *v.* Talbot, 18 Tex., 774; Smith *v.* Fly, 24 Tex., 345; Munson *v.* Hallowell, 26 Tex., 480; Aug. on Lim., sec. 189; Austin *v.* Talk, 20 Tex., 164; Badger *v.* Badger, 2 Wall., 95.

*Goldthwaite & Turner,* for appellee.

An unbroken current of English authority, and a very large weight of authority in this country, fully sustains the doctrine as originally laid down in Bree *v.* Holbeck (2 Douglas's Reports, 655) in England, and in Jones *v.* Conway (4 Yeates's Penn. Reports, 109) in this country, that fraud can be successfully replied to the statute of limitations, and that the same only begins to run from the time of the discovery of the fraud.

Statutes of limitations are statutes of repose, and are mainly intended to suppress fraud, by preventing fraudulent and unjust claims from being presented at great distances of time, when the evidence might no longer be within the reach of the party by which they could be repelled.

They ought not, then, to be so construed as to become instruments to encourage fraud, if the law admits of any other interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity according to their respective jurisdictions.

Our blended system of law and equity obviates the necessity of preserving these distinctions of law and equity in our practice.

The broad doctrine, as originally laid down by the courts, that fraud, coupled with the ignorance of its perpetration, forms an exception to the statute, and that the same does not begin to run until the fraud is discovered, has been somewhat modified by many of the courts of this country, and especially by the court of our State.

This modification of the rule, as thus broadly laid down, is, that in cases of fraud the statute of limitations begins to run from the discovery of the fraud, or from the time when the same was perpetrated, and might have been discovered by reasonable diligence.

We beg to refer the court to the following authorities in support of the rule as broadly laid down:

Hovenden *v.* Annesley, 2 Sch. & Lef. R., 634.

"The reason on which the doctrine rests," says Lord Revesdale, is that "as fraud is a secret thing, and may remain undiscovered for a length of time, during such time the statute of. limitation shall not operate, because until discovery the title to avoid it does not completely arise. Angell & Ames on Lim., 5th ed., p. 180, and cases cited; Kerr on Fraud and Mistakes, 309, *et seq.;* 2 Story's Eq. Jur., sec. 1521*a* and note; Ormsby *et al. v.* Longworth *et al.*, 11 Ohio, 667; Michaud *v.* Girod, 4 Howard U. S., 561; Stearns *v.* Page, 7 Howard U. S., 830; Veazie *v.* Williams, 8 Howard U. S., 158; Curry *v.* Allen, 34 Cal., 254; Harrel *v.* Kelly, 2 McCord, S. C., 425; Ferris *v.* Henderson and Wife, 12 Penn., 49.

This case goes very far, and the attention of the court is specially invited to it. (Bricker *v.* Lightner's Ex'rs, 40 Penn. R., 199; Biddle *v.* Murphy, 7 S. & R., 235; Gleson *v.* Cuttle, 2 Grant, 274; Harrisburg Bank *v.* Foster, 8 Watts, 16; Way *v.* Cutling, 20 N. H., 187.)

In this last case it is held that in a case where the plaintiff had a right to rely upon the representations of defendant, the fraudulent misrepresentations of the defendant amounted to a concealment, although the plaintiff has the means of

testing the truth and detecting the fraud.  See also Henry County v. Winnebago and Drainage Co., 52 Ill., 299.  (U. S. Dig., vol. 2, p. 444, sec. 80, (1871.)  We give the same as found in the Digest, because the volume containing the same is not accessible to us.  (Ericcsin *et al.* v. Quinn, 47 N. Y., 410 ; Marshall v. Buchanan, 35 Cal., 264; Jones v. Reese's Ex'rs, 4 Yeates's Penn. R., 159.)

So also it has been held in Indiana.  (4 Blackf. Ind. R., 84, 85.)  In this case the court say:

" The general principle is well settled that the statute does not affect frauds ; but still that rule has its limits.  In cases of frauds the statute begins to run from the time the fraud is so fully developed and disclosed as to enable the injured party to see the nature and the extent of the fraud committed.

" The statute in good conscience cannot run until the party has a right to commence his suit, and that right cannot accrue in the case of fraud until the injured party is informed of the injury done or fraud committed."

The courts of this State, as already stated, have somewhat modified the principle, and hold that in case of fraud the statute begins to run from the time the fraud was committed, and might have been discovered by the use of reasonable diligence.  (Smith v. Talbot, 18 Tex., 774; Smith v. Fly, 24 Tex., 345 ; Munson v. Hallowell, 26 Tex., 475.)

In this last case, in a very able opinion by Mr. Justice Moore, the court say, in regard to the statute of limitations, " It was not intended to deprive a party of redress when by the act of the defendant himself he has been deprived of the opportunity of availing himself of it.  To give it such a construction would make it a means of encouraging rather than preventing frauds.  It is a general principle that no one will be permitted, in a court of justice, to claim protection by means alone of his own fraud.  If the plaintiff has had knowledge of it, the statute of course was against him.  But if he has been kept in ignorance of his rights by the fraudulent contrivance of the defendant, does not the fraud

of the latter estop him from claiming that there has been a delay in prosecuting the suit which his own actions have prevented from being brought at an earlier day? Every citizen is entitled, as is said in common-law phraseology, to his day in court; that is, he is entitled to the use of the remedies prescribed by law. Can a party be said to have had this when he is necessarily deprived of the means or opportunity of resorting to this remedy by the act of the defendant? Does not the defendant's fraud, in depriving the plaintiff of his legal remedy, coupled with the original cause of action, give the plaintiff a right to relief in equity, as in other cases, when he has been deprived by the defendant of his remedy at law, and render it an immaterial question in our courts whether the recovery is upon a new cause of action, arising upon the discovery of the fraud, or upon the original demand against which the defendant's acts had prevented the running of the statute?" (Andrews *v.* Smithwick, 20 Tex., 111; Hudson *v.* Wheeler, 34 Tex., 356.)

"And 'what would be a reasonable time for the discovery of the fraud' is a question to be submitted, with all the circumstances proven, to the jury."

II. The plaintiff is charged with acquiescence and tardiness in asserting his rights.

We beg to cite on this point Kerr on Fraud and Mistakes, 300; Randall *v.* Errington, 10 Ves. Jr., 428.

In this case the court say, "To fix acquiescence upon a party, it should unequivocally appear that he knew the fact upon which the supposed acquiescence is founded and to which it refers." (Garvin *et al. v.* Lowry, 7 Smedes & Marsh., 27.)

"Knowledge or notice of a transaction is necessary to constitute a ratification by acquiescence."

III. The credibility of conflicting witnesses is a matter peculiar to the jury, and the verdict will not be disturbed because they may have erred. (8 Tex., 228; 7 Id., 4; Anderson *v.* Anderson, 23 Tex., 641.)

"A verdict must clearly be wrong to induce this court to set it aside." (Long *v.* Steiger, 8 Tex., 460; Gamage *v.* Trawick, 19 Tex., 64.)

"It is not enough that it is not clear that it is right," (Briscoe *v.* Bronaugh, 1 Tex., 340,) "or that there was conflicting testimony." (Edrington *v.* Kiger, 4 Tex., 93; Adams *v.* George, 25 Tex. Supp., 374; Fowler *v.* Lewis, 25 Tex. Supp., 380.)

MOORE, ASSOCIATE JUSTICE.—The exceptions of the defendant to the plaintiff's petition should have been sustained. It does not appear from the petition that plaintiff suffered any injury from the alleged false and fraudulent representations as to the character of the note transferred to him, or that the note would or could possibly have been of any greater value to him than it was if appellant's representations respecting it had been true. The defendant refused to indorse the note, but, as the plaintiff charges, represented that it was what was known and called a railroad-stock note, and that it had been given by Spence, the maker, to the Houston and Texas Central Railroad Company for his subscription to the capital stock of said company; and upon its payment, its equivalent in value in the stock of said company would be issued. But it is not alleged that defendant represented that the stock of said company for which the note was given was held by said company, or any one else, as a security for the payment of said note, or that such was the fact. On the contrary, it appears from the evidence adduced on the trial, that while said railroad company only issued conditional certificates for stock to persons paying their stock subscriptions in notes such as this was represented to be, yet, when the company transferred these notes without indorsement, as was the case with this note, if a stock note, the maker became at once entitled, on presentation of this conditional certificate, to an unconditional certificate for his stock. There is nothing stated in the petition from which it can be inferred that plaintiff was

2

led to suppose that the unconditional certificate of stock had not been previously delivered to Spence, or that the holder of the note could prevent this being done, whenever he, or some one to whom he might assign his stock, should demand it. Evidently, from anything alleged in the petition, the fact that the note was given for capital stock in said railway company gave it no more real value than if it was executed on any other valid consideration. The plaintiff having taken it without indorsement, had no security for its payment except the solvency of the maker. The consideration which induced its execution was wholly immaterial. The false representations of the defendant in reference thereto could in no way injure the plaintiff, and consequently are not actionable. But if said false representations were of such a character as to entitle plaintiff to maintain a suit upon them, the right of action was evidently barred by limitation. The statute, giving it the most favorable construction for plaintiff, would unquestionably, if not suspended, commence to run from the discovery of the fraud and deceit, or from the time when, by the use of ordinary and reasonable diligence, plaintiff might have discerned it. If the plaintiff took the note on the faith of its having been given for capital stock in the Houston and Texas Central Railway Company, and with the belief that this fact added anything to its value, or tended in any way to secure its payment, when the maker failed to pay it on its becoming due, he was surely put upon inquiry as to the fact, and, it must be supposed, would have sought to avail himself of such security. Certainly he would have done so after he had sued the maker to insolvency. The note was due in 1860. Suit was brought upon it at the first term of the court thereafter. And plaintiff was informed by his attorney, shortly after his return home at the close of the war, that nothing could be collected on the judgment. He saw Spence, the maker of the note, before his death, which seems to have occurred in 1867, and was informed by him that

he could pay nothing. And after his death plaintiff knew that his estate was utterly insolvent. Though the plaintiff could evidently have learned that the note was not given for stock, by inquiring from Spence or at the office of the company, he made no effort to inform himself on the subject. He must have learned that it was not a note of this character, if he had endeavored to avail himself of the security, if any, it entitled him to as a stock note, if the alleged representations were regarded as material; yet he did nothing of the kind. Near ten years had elapsed from the date of the alleged false representations prior to the 30th of March, 1870, when, unquestionably, the statute of limitations would commence to run, if he had then learned of the fraud and deceit practiced upon him by the defendant. If he had not then become informed as to it, there had been certainly ample time for him to have done so by the use of the least degree of diligence. Indeed, he could not have failed to have learned that the note was not given for stock in said company long before that time, if he attached any value to it on that account, except through the grossest carelessness and negligence. His ignorance of the facts, under such circumstances, certainly will not prevent the statute from running. The mere statements in the petition that plaintiff could not have discovered that the alleged representations of defendant were false and fraudulent, by the use of reasonable diligence, evidently will not relieve him from the bar of the statute. If the want of such knowledge will prevent the running of the statute, it is not sufficient for the plaintiff to assert merely the conclusion that he could not have discerned that the representations made him were false, by the use of reasonable diligence, but he must state the facts upon which he relies, that the court may see whether they justify and support such a conclusion. The exception to the petition, on this ground, was well taken, and should have been sustained. And the verdict of the jury, on the plea of limitations, was against the law and evidence,

and the court should have set it aside and granted a new trial.

The judgment is reversed and the cause remanded.

REVERSED AND·REMANDED.