JOHN KUHLMAN v. W. R. BAKER.

1. FRAUD—LIMITATION.—Fraud will only prevent the running of the statute of limitations until the fraud is discovered, or until, by the use of reasonable diligence, it might have been discovered.

2. PLEADING—SAME.—If a petition reveals facts showing that the failure to discover fraud was the result of the laches of plaintiff, the general allegation that the fraud could not have been discovered sooner will not prevent the running of the statute of limitations.

3. LACHES — SAME. — Failure to recognize the contents of a deed of record for seventeen years, is evidence of laches in discovering its contents, the ignorance of the contents being the ground relied on to stop the running of the statute.

4. LACHES.—See allegations held insufficient to warrant relief against the running of the statute of limitations.

APPEAL from Harris. Tried below before the Hon. James Masterson.

January 10, 1874, Kuhlman sued Baker in the District Court of Harris county, alleging his purchase of land in April, 1856, of Baker, for which he took a quit-claim deed, believing it to be a warranty; that the title to the land had failed, and his recent discovery that his deed from Baker was not a warranty. The petition was adjudged defective, on demurrer. The opinion of the court sets out sufficiently the allegations of the petition discussed by the court.

*Goldthwaite & Turner*, for appellee.

I. The petition shows no diligence. Not one act of prudence, such as characterizes an ordinarily prudent man in the management of his business, was ever performed by the plaintiff in this matter. The records of the county are open and accessible to all.

The demand is a stale one, and as such is barred in equity. More than seventeen years have elapsed since this purchase was made. It appears on the face of the pleadings that this quit-claim deed was made, executed, and delivered to plaintiff on the 22d of April, A. D. 1856, and that this suit was filed on the 10th of January, A. D. 1874.

It has been said by John Voet that controversies are limited to a fixed period of time, lest they should be immortal, while men are mortal. (J. Voet, ad. Pand., lib. 5, tit. 1, sec. 53, p. 328.)

Laws thus limiting suits are founded on the noblest policy. They are statutes of repose, to quiet title, to suppress frauds, and to supply the deficiency of proofs arising from the am-

biguity and obscurity or the antiquity of transactions. The statutes of limitations seem to be applicable equally in law and in equity. (Story's Confl. of Laws, sec. 576; 2 Story's Eq. Jur., sec. 1520, and cases cited; Miller v. McIntyre, 6 Pet., 61; Coulson v. Walton, 9 Pet., 62; White v. Parnther, 1 Knapp, 179; Peyton v. Stith, 5 Pet., 485; Piatt v. Vattier, 9 Pet., 405; Boone v. Chiles, 10 Pet., 177.)

Equity recognizes a defense founded on the mere lapse of time and the staleness of the claim, where no statute of limitations governs the case. (2 Story's Eq. Jur., sec. 1520; Kane v. Bloodgood, 7 Johns. Ch., 93; DeCouche v. Savetier, 3 Johns. Ch., 190; Murray v. Coster, 20 Johns., 576; Prevost v. Gratz, 6 Wheat., 481; Hughes v. Edwards, 9 Wheat., 489; Sherwood v. Sutton, 5 Mason, 143.)

The principle on which the court refuses its aid seems to be the danger and injustice which may be the effect, rather than the presumption of a fact.

Courts of equity have at all times, upon general principles of their own, even where there was no statutable bar, refused relief to stale demands where the party has slept upon his rights for a great length of time; and where a bar has been fixed by statute to the remedy in a court of law, the remedy in a court of equity has, in analogous cases, been confined to the same period. (Marquis of Cholmondeley v. Lord Clinton, 2 Jac. & W., 151, and cases cited; Piatt v. Vattier, 9 Peters, 405; Smith v. Clay, 3 Bro. Ch., 640, per Lord Camden.)

In the case last cited the court says: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting the court is passive and does nothing; laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction there was also a limitation of suit in this court."

II. The plaintiff seeks to relieve his case from the embarrassment of antiquity, by alleging fraud and deceit on the part of the defendant.

The earlier authorities held that in cases of fraud the statute of limitations did not commence to run until the discovery of the fraud. This rule has been relaxed; and now the settled law of England and of this country seems to be, that in such cases the statute commences to run from the time when the fraud might have been discovered by the use of reasonable diligence. This rule is founded in reason. The law will not assist a man who is capable of taking care of his own interest, except in cases in which he has been imposed upon by deceit, against which ordinary precaution could not protect him. (Per Lord Winford, in the House of Lords; Blachford v. Christian, 1 Knapp, 77; 1 Story's Eq. Jur., secs. 236, 237.)

The plaintiff does not assign any reason why the discovery of the defect of title was not made, or could not have been made, sooner than the March Term, 1873, of the District Court of Harris county, nor could any be assigned. He had the records before him. There was nothing in the nature of the case to prevent a discovery, but everything facilitated it. An investigation of the records at any time within seventeen years would have shown it; and the failure to resort to so obvious a means can but be regarded as attributable solely to the plaintiff's own negligence. The discovery of a fact susceptible of being so readily ascertained ought to have been sooner made. The negligence of plaintiff in a case of this kind may put it out of the power of the defendant to have recourse upon his vendor, and to permit a recovery against him in an action after such a lapse of time might work an irreparable injury, which might have been avoided had a discovery been earlier made. (Smith v. Fly, 24 Tex., 353; Munson v. Hallowell, 26 Tex., 475; Ripley v. Withee, 27 Tex., 14; Hudson v. Wheeler, 34 Tex., 356.)

Admitting the fact that the plaintiff was an ignorant and

illiterate man, we insist that the very slightest attention to his own interest, the most ordinary prudence which characterizes a man in his dealings with others would have induced him to have the records examined and the titled to the land investigated.

"It has been beautifully remarked, with respect to the emblem of Time, who is depicted as carrying a scythe and an hour-glass, that while with one he cuts down the evidence which might protect innocence, with the other he metes out the period when innocence can no longer be assailed."

We respectfully submit that the demurrer and exceptions were properly sustained in the court below.

*Frank W. Henderson*, for appellant.—The only question, as I conceive, to determine, is whether plaintiff's demand was barred by the statute of limitations. I think not; for his cause of action did not arise until his eviction, March, 1873, and the statute of limitations began to run only from that time, a period within two years prior to the institution of this suit.

Where the elements of accident, fraud, mistake, undue influence, imposition, or surprise, and the like, enter into the case, a court of equity will grant relief, even where the relief sought is based upon a mistake of law. (1 Story's Eq. Jur., title MISTAKE, sec. 120.)

It is a well-established principle, that under circumstances of fraud, accident, mistake, undue influence, imposition, inequality of the contracting parties, surprise, &c., the statute of limitations begins to run only from the date of the discovery; and in this case, besides alleging the above circumstances, plaintiff alleged that he did not know of the fraud and fraudulent representations that had been practiced upon him until the March Term, 1873, of the District Court of Harris county, and this suit was brought to the March Term, 1874. (Kerr on Fraud and Mistake, 51, 309–311; Smith *v.* Talbot, 18

Tex., 774; Munson *v.* Hallowell, 26 Tex., 475; Moreland *v.* Atchison, 19 Tex., 303.)

It is granted that the principle is a sound one, that the purchaser is, as a general rule, bound to diligence in ascertaining the true state of his title, and that having taken a title under a misapprehension of the character of it, or having taken a writing under a misapprehension of its nature, where both parties have acted in good faith, the purchaser is chargeable with negligence if any circumstance happens sufficient to put him upon inquiry, and the statute would begin to run from the time of the happening of such circumstance.

But it is denied that this principle has any applicability to this case; for such circumstances are alleged as show that defendant, having the advantage of plaintiff, and having undue influence and dominion over him, by false representations perpetrated a fraud upon him, to wit, that at the time of the purchase of the land by plaintiff from defendant, defendant was county clerk, and that plaintiff was in the habit of going to him for advice; that plaintiff is an ignorant man, not knowing how to read or write; that plaintiff reposed great confidence in the representations of Baker, the defendant; that defendant represented that he owned the land; that he (defendant) would give him a good warranty title; that defendant gave him a deed, which he always thought was a warranty deed until the suit for eviction was brought; that he was in possession of the land up to that time; that he (plaintiff) was evicted in 1873, and that he then learned that Baker had not given a warranty deed, and that he had no title whatsoever; that he did not know, and that he could not by any reasonable diligence have known, the fraud practiced in not giving the kind of title promised until the suit for eviction in 1873, a period within two years prior to the filing of this suit.

These allegations show such fraudulent acts and representations as allayed all reasonable suspicion of fraud. Under these circumstances the statute of limitations ought to be dis-

regarded. (Phalen *v.* Clark, 19 Conn., 421, and cases there cited.)

Diligence, I take it, is a relative term. What would have been gross negligence under other circumstances, as if he (plaintiff) had been an educated man, and dealing with a man in whom he had no reason to place confidence, would be ordinary or even extraordinary diligence under the circumstances alleged in plaintiff's pleadings; for what more could plaintiff do than get the advice of his trusted adviser? And it cannot be said that he had no right to believe a man in whom by his dealings he had been induced to place his confidence.

GOULD, ASSOCIATE JUSTICE. — The court sustained exceptions to the petition on the ground of limitation, and the question presented is the correctness of that ruling.

The petition alleged a purchase of land by plaintiff from defendant in April, 1856; that plaintiff could neither read nor write, and was in the habit of going to defendant for advice; that defendant, knowing the plaintiff had confidence in his representations, and for the express purpose of defrauding plaintiff, falsely represented that he was the owner of the land, and promised that he would make plaintiff a good title thereto, and that plaintiff was thereby induced to buy and pay for the land, taking from the defendant and carrying home what he believed to be a deed with warranty, but it proved to be only a quit-claim deed. The petition also alleges that in 1873 the plaintiff was evicted by suit, and that he did not discover that his deed was a mere quit-claim deed until, on being sued for the land, he, in the spring of 1873, consulted counsel; alleging, further, that he could not by reasonable diligence have sooner made the discovery. This suit was brought in January, 1874, to recover back the purchase-money and for damages for the alleged fraud.

The established rule in this court is that fraud "will only prevent the running of the statute until the fraud is discovered, or by the use of reasonable diligence might have been

discovered." (Smith *v.* Fly, 24 Tex., 352; Ripley *v.* Withee, 27 Tex., 14; Hudson *v.* Wheeler, 34 Tex., 356; Bremond *v.* McLean, 45 Tex., 18.)

Notwithstanding a general averment of the conclusion that the plaintiff could not by reasonable diligence have sooner discovered the fraud, if the facts stated show, on the contrary, that the failure to discover it sooner was the result of his own laches, then the petition fails to show that limitation only commenced to run from the time of such discovery. (Bremond *v.* McLean, 45 Tex., 18.)

Our opinion is, that if the alleged fraud constituted a sufficient reason why the plaintiff did not at the time the deed was made discover that it was a quit-claim, his subsequent failure to inform himself as to the contents of his deed in so material a point was chargeable to his own neglect of ordinary precaution. There is no allegation of any act or representation of defendant subsequent to the deed tending to prevent its examination, nor does it sufficiently appear that the alleged confidential relation of the parties continued until the discovery. If after over seventeen years this suit may be maintained on the excuse that the plaintiff neglected to have his title examined until he was sued for the land, the effect would be to allow such suits to be brought at any time when the nature of the deed is first discovered, no matter how great the lapse of time.

Our opinion is that the petition stated a case in which limitation commenced to run before the alleged discovery of the fraud, and that the exceptions to the petition were rightly sustained.

The judgment is affirmed.

AFFIRMED.