## FRANK DUNN ET AL. v. ELLA G. TAYLOR ET AL.

Decided March 7, 1906.

**1.—Attack on Judgment—Limitation of Four Years.**

Exception to a cross–bill, attacking a judgment on the ground that there was fraud in its procurement, was properly sustained where it appeared from the allegations of the cross–bill that more than four years had elapsed since the rendition of the judgment; and no excuse was given for not discovering the alleged fraud sooner.

**2.—Attack on Judgment—Requisites.**

It is requisite in an attack upon a judgment rendered voidable by fraud in its procurement, that the suit should be brought in the court in which the judgment was rendered, and all the parties to the fraud must be made parties to the suit.

**3.—Failure of Judgment to Dispose of all Parties.**

In a collateral attack it will be presumed, in aid of the judgment, that some disposition was made of the party not mentioned in the judgment, prior to its rendition.

**4.—Void and Voidable Judgments—Distinction.**

There is a distinction between a judgment which, though really void, carries in its records the evidence of validity, and one which bears on its record the proofs of its own invalidity. The one is held subject only to direct attack, the other may be attacked under any and all circumstances wherever it presents itself. The first is void, the latter is voidable. The recitation in a judgment of jurisdictional facts, if not contradicted by the record, will be presumed to be true, and they can not be denied or questioned in any collateral proceeding.

**5.—Same.**

Where the recitals in the judgment are such as to demonstrate the impossibility of there having been jurisdiction of the person or subject matter, the judgment is void and subject to collateral attack.

**6.—Suit Against Unknown Person.**

In May, 1897, there was no law in effect by which an unknown person could be cited, unless he was the heir of some known ancestor, whose name was required to be set out in the citation by publication; the only other persons allowed to be cited, except by personal service, were nonresidents of the State, absentees from the State, transients or persons whose residences were unknown. In August, 1897, provision was first made for citing an unknown person in any case.

**7.—Record or Judgment Roll—What is Meant by.**

By the record or judgment roll, referred to as being proper to consider in determining the validity of a judgment, is meant at least the process filed in the suit, the judgment itself, and the pleadings of the parties.

**8.—Limitation—Sufficient Occupancy of Land.**

If one go into possession of land and cultivates and uses it, claiming it as his own, the possession would be adverse, although the land was not fenced; so, if a man claimed land within certain limits, and herded his stock thereon, and used the timber, and performed other acts of ownership, he might perfect title by limitation without the aid of an enclosure.

Appeal from District Court of Dimmit.    Tried below before Hon. J. F. Mullaly.

*N. A. Rector,* for appellants.—A judgment that is fraudulent and collusive can be attacked for fraud and collusion at any time within four years after the same has been discovered, or should have been discovered by the exercise of reasonable diligence; and any errors appearing in the pleadings, process and judgment therein may be reviewed and vacated, annulled and set aside. Chicago, Texas & M. Ry. Co. v. Titterington, 84 Texas, 225; Dashner v. Wallace, 68 S. W. Rep., 308.

Prior to the Act of 1897 no suit could be brought against an unknown owner for taxes; and no mode of citation to an unknown owner was provided by law.

A judgment that does not dispose of all of the parties to the suit is not a final judgment, and will not support an order of sale. Wooters v. Kauffman, 67 Texas, 497; Mignon v. Brinson, 74 Texas, 19; Mills v. Paul, 23 S. W. Rep., 189; Stewart v. Lenoir, 72 S. W. Rep., 619; Mendoza v. Atchison, T. & S. F. Ry. Co., 62 S. W. Rep., 418.

The court erred in refusing to permit Dunn and Tackaberry to introduce before the court for the purpose of impeaching the recital in said judgment in cause No. 191, that the defendant, the unknown owner, was duly cited, the original citation in said cause directed to the sheriff of Dimmit County, directing him to publish the same for four weeks in a newspaper published in Dimmit County; and the sheriff's return thereon showing that he had caused the same to be published for four weeks only, in the "Javelin," a newspaper published in said county. Fowler v. Simpson, 79 Texas, 617; State v. Dashiell, 74 S. W., 779; Roberts v. Stockslager, 4 Texas, 308.

The court erred in refusing to allow defendant Dunn and intervenor Tackaberry to introduce before the court the original petition in said cause No. 191, for the purpose of showing that the unknown owner of the land in controversy was sued as a party defendant, and that the San Antonio National Bank was sued therein as a party claiming said land by a deed on record, and that said suit was for alleged delinquent taxes amounting to $70.04; the taxes for the year 1883 and 1884 being included therein which were not recoverable by suit in behalf of the State.

The court erred in permitting the plaintiffs, defendants in cross-action, to introduce in evidence the order of sale in said cause No. 191, The State of Texas v. The San Antonio National Bank et al., because the same was not attested by the seal of the clerk of the District Court of Dimmit County, by whom it purported to be issued. Rev. Stats., art. 2338; Hale v. Gee, 29 S. W. Rep., 44.

*A. C. Bullitt, C. L. Bass* and *F. Vandervoort,* for appellees.—Where the transaction is a matter of public record, either through conveyance regis-

tered as required by law or through other means, so that the party complaining has abundant means of finding out the facts of the transaction and its nature, there can be no concealment, and he will be charged with notice of the transaction and of facts which a diligent investigation thereof would develop. A party must be presumed to know what, by the exercise of reasonable diligence, he might have discovered; or when fundamental facts upon the alleged fraud rests are matters of public record, open to inspection, he will not be permitted to plead ignorance of the fraud in order to evade the operation of the statute. Woodhouse v. Cocke, 39 S. W. Rep., 948; Watson v. Texas & Pac. Ry., 73 S. W. Rep., 830; Bass v. James, 18 S. W. Rep., 336; Presnall v. McLeary, 50 S. W. Rep., 1066; Cooper v. Lee, 75 Texas, 114; Shirley v. Waco Tap Ry., 78 Texas, 147; Rev. Stats. of Texas, art. 3358; 19 Am. & Eng. Ency. of Law, pp. 251, 252 and authorities under note 1; Vodrie v. Tynan, 57 S. W. Rep., 681.

Even though no statutory provision was in existence, providing a way to serve unknown owners, as the Act of 1895 provides for the recovery of taxes against unlisted lands, it contemplates suits against unknown owners, and if there was no statutory provision, providing for citation against an unknown owner, it was within the power of the court to provide or adopt a manner by which the unknown owners could be cited, even by publication, because the proceeding was one in rem. Batt's Stats., arts. 5232-b, 1235-1238; Grassmeyer v. Beeson, 13 Texas, 524; Lawler v. White, 27 Texas, 250.

As the judgment recited that the defendants had been duly cited, and the judgment showing that a foreclosure was had upon the property, the remote vendees of the bank, which purchased at foreclosure sale, are entitled to conclusive presumption of law, that the court adopted or provided a sufficient notice to the unknown owners, which would give the court jurisdiction to foreclose the lien. Simpson v. Huff, 74 S. W. Rep., 49; Templeton v. Ferguson, 89 Texas, 47.

It will be presumed in a collateral attack upon a judgment, that a rightful disposition was made of all the parties to the suit, and if there is nothing upon the face of the final judgment to show what disposition was made of all of the defendants, the presumption is that they were dismissed from the cause or some other disposition was made of them consistent with the final judgment. Alston v. Emmerson, 18 S. W. Rep., 566.

As the suit was one in rem, and the San Antonio National Bank was made a party defendant to the suit with prayer for foreclosure judgment against it, the judgment was final against it, whether mentioned in the final judgment or not. Carlton v. Miller, 2 Texas Civ. App., 619; League v. State, 57 S. W. Rep., 34.

Where the judgment recites that the defendants were duly served with citation, this recital can not be disputed, except in a direct attack upon the judgment, and as more than four years had elapsed since the judgment was rendered before any attack was made on the same, the citation was not admissible in evidence to dispute the recital in the judgment. Sloan v. Thompson, 4 Texas Civ. App., 425; Treadway v. Eastburn, 57 Texas, 214; Martin v. Burns, 80 Texas, 678; Fowler v. Simpson, 79 Texas, 617; Tobar v. Losano, 6 Texas Civ. App., 700; Mitchell v. Meu-

ley, 32 Texas, 464; Lawler v. White, 27 Texas, 250; Withers v. Patterson, 27 Texas, 491; Murchison v. White, 54 Texas, 84.

As there was no time expressly provided for which the citation to an unknown owner should be published, this question would be controlled by legislative intent, and as the Legislature at its next session provided that the citation for unknown owners should be published three weeks, they clearly did not intend under the former law that it should be published longer.    Laws of 1897, p. 138; Batt's Stats., art. 1235, 1238; Tobar v. Lasamo, 6 Texas Civ. App., 700.

The San Antonio National Bank was a party defendant in cause No. 191, the judgment was a final judgment against it, whether it was mentioned therein or not, as the suit for taxes was one against the land. League v. State, 57 S. W. Rep., 34.

FLY, ASSOCIATE JUSTICE.—Ella G. Taylor, joined by her husband, J. S. Taylor, instituted this suit to recover from Frank Dunn the John Cummings survey of 640 acres of land.    In addition to the ordinary averments in actions of trespass to try title, title to the land by three, five and ten years limitation was pleaded by the plaintiffs.    Dunn answered by general denial and plea of not guilty, and also through a cross-action sued for the land and attacked the judgment in cause number 191, styled The State of Texas v. The San Antonio National Bank et al., which was a suit for delinquent taxes against the bank and an unknown owner.    Afterwards J. V. Tackaberry intervened in the suit alleging that he had purchased the land from Dunn, since the suit was instituted, and filed pleadings similar to those of Dunn.    Dunn and Tackaberry then amended their pleadings and made a number of purchasers from Taylor and wife parties, defendant, to their cross action for the land.    Those defendants pleaded three, five and ten years limitation.    The court peremptorily instructed a verdict for the Taylors and the parties brought into the suit by appellants.

Appellees claimed title through a deed from the San Antonio National Bank, which bought the land at a sale by the sheriff of Dimmit County, made by virtue of an order of sale issued under a judgment in favor of the State of Texas and against an unknown owner, of date May 25, 1897.    The suit in which the judgment was rendered was styled "The State of Texas v. The San Antonio National Bank et al.," and the judgment made no disposition of the bank.    One of the deeds admitted in evidence was from Mrs. M. T. Taylor to Mrs. Ella G. Taylor.    The latter was at that time the lawful wife of J. S. Taylor.

The first assignment of error brings in review the action of the court in sustaining exceptions to the cross action of appellants attacking the judgment, which exceptions were based on the suit being barred by limitation of four years.    The judgment was rendered on May 25, 1897, and the land was sold thereunder to the San Antonio National Bank on September 7, 1897, and the sheriff's deed was filed for record in Dimmit County on September 16, 1897.    Appellants filed their cross action on May 20, 1905, about eight years after the judgment was rendered and considerably more than seven years after the sheriff's deed was filed for record.    The foregoing facts were fully set out in the cross action and it was apparent on the face of the pleadings that appellants

had exercised no diligence whatever in attempting to, discover the fraud alleged in the procurement of the judgment and the sale of the land by virtue' thereof. It was not alleged that the parties to the judgment had used any means to conceal the fact that the judgment for taxes had been rendered in favor of the State of Texas, nor that the sale under execution was fraudulently concealed. On the other hand the judgment was duly recorded in the minutes of the court and the sheriff's deed recorded a few days after the sale of the land.

As was said by this court in the case of Vodrie v. Tynan, 57 S. W. Rep., 680: "It is the settled rule in Texas that fraud will only prevent the running of the statute of limitations until the fraud is discovered, or by the use of reasonable diligence might have been discovered. Munson v. Hallowell, 26 Texas, 475; Anding v. Perkins, 29 Texas, 348; Bremond v. McLean, 45 Texas, 10; Kuhlman v. Baker, 50 Texas, 630; Ransome v. Bearden, Id., 119; Alston v. Richardson, 51 Texas 1; Kennedy v. Baker, 59 Texas, 150; Brown's Heirs v. Brown, 61 Texas, 45; Calhoun v. Burton, 64 Texas 510; Bass v. James, 83 Texas, 110." It is also well settled that if a judgment is procured by fraud it is subject to attack, through a direct proceeding, at any time within four years from the date of its rendition, but in order to suspend the running of the statute of limitation, so as to permit such attack on a judgment after the expiration of four years, there must not only have been fraud in obtaining the judgment but it must have been coupled with such concealment of the fraud as to prevent the attacking party from ascertaining the fraud by the use of reasonable diligence. This proposition necessarily follows from the principle that in order for fraud to suspend the statute there must be no lack of diligence on the part of the person attacking the transaction, for if the fraud is not concealed but perpetrated in such a way as to charge him with knowledge he is in no position to enter a court of equity for redress. (Munson v. Hallowell, 26 Texas, 475; Texas & Pac. Ry. v. Gay, 86 Texas, 571.)

In this case the sheriff's deed was a matter of public record, and in that deed it was recited that it was made by virtue of an execution issued under a certain judgment. That deed was placed on record and the exercise of the least diligence upon the part of appellants would have led to a discovery of the alleged fraud.

We have considered this matter as though the cross action constituted a direct attack on the judgment, which is by no means true. It is requisite in an attack upon a judgment rendered voidable by fraud in its procurement, that the suit should be brought in the court in which the judgment was rendered, and all of the parties to the fraud must be made parties. In the cross action of appellants neither the State of Texas nor the San Antonio National Bank were made parties. It might be that it being impossible to make the State a party appellants would be relieved from that, but that would offer no excuse for a failure to make the bank a party. (Smith v. Perkins, 81 Texas, 152.) In that case it was held that a cross action was a collateral attack, for the reasons that the judgment sought to be attacked had been rendered in a different court and all the original parties were not parties to the cross action. It is not held in that case that an attack on a judgment through a cross bill is a collateral attack merely because so made, and, while not abso-

lutely necessary to the proper disposition of this case, in view of attacks made on the opinion of this court in the case of Scanlan v. Campbell, 55 S. W. Rep., 502, by appellees, we deem it not improper to say that no valid reason can be advanced why an attack, made through a cross bill on a judgment rendered in the same court, the same parties to the judgment being parties to the cause in which the cross bill is filed, would not be a direct one. The cross bill so attacking a judgment, would, to all intents and purposes, be an independent suit to set aside the judgment. We have seen no authority to the contrary. This does not aid the cause of appellants, however, because their cross bill was defective.

The second and third assignments are that the court erred in admitting the judgment in evidence entitled the State of Texas v. San Antonio National Bank et al., because the same showed on its face that it was a suit for taxes against an unknown owner, and the law made no provision at that time for a tax suit against an unknown owner; and because the judgment showed that the San Antonio National Bank was one of the defendants and no disposition was made of said defendant in the judgment.

In regard to the last objection it may be said that in a collateral attack it will be presumed in aid of the judgment that some disposition was made of the party not mentioned in the judgment prior to its rendition. (Crawford v. McDonald, 88 Texas, 626; Templeton v. Ferguson, 89 Texas, 47; Gullett v. O'Connor, 54 Texas, 415.)

Having disposed of appellants' cross action as not being a direct attack on the judgment, the question arises under the first objection to the introduction of the judgment in evidence, as to whether it is a void or merely voidable judgment. This becomes important for the reason that if the judgment was on the record void, it is subject to attack in any proceeding and in any court. It is true, that in the case of Crawford v. McDonald, 88 Texas, 626, the Supreme Court held that a certain judgment was absolutely void and yet held that it could not be attacked in a collateral proceeding, the ground for so holding being that such attack would be contrary to public policy. That decision, however, is in conflict with most authorities on the subject. Speaking on this subject Van Fleet, in section 14 of his work on Collateral Attack, says: "There is a close analogy between a void deed and a void judgment. If a deed is a forgery, or was never delivered, or was executed by an assumed agent without color of authority, the apparent grantor can rest at ease, ignoring it entirely. He can defeat all rights and titles based on it whenever and wherever he meets them. So with a void judgment. The party whom it professes to bind can rest at ease ignoring it entirely. He can defeat an action on it and all rights and titles derived through it whenever and wherever he meets them. Like a void deed it is simply waste paper." In the case of Milam County v. Robertson, 47 Texas, 222, it was said: "When, however, the judgment is not merely erroneous, but an absolute nullity, it can have no binding force or effect either in the court in which it is rendered, or in any other in which it may be brought in question." Again in the case of Bender v. Damon, 72 Texas, 92, Chief Justice Stayton said: "If a judgment be void it is not necessary that the person against whom it is entered have

it set aside by a proceeding for that purpose; but in a collateral pro-. ceeding in any court he may show its nullity."

It may be that public policy demands where there is nothing in the record to put innocent purchasers upon notice as to the nullity of a judgment, that in all collateral proceedings it should be held valid and binding, for such a judgment is not void, but voidable. There is, according to numerous Texas decisions, a distinction between a judgment which, though really void, carries in its records the evidence of validity and one which bears on its record the proofs of its own invalidity. The one is held subject only to direct attack, the other may be attacked under any and all circumstances wherever it presents itself. The first is voidable, the latter is void. In other words it is held that the recitation in a judgment of jurisdictional facts, if not contradicted by the record, will be presumed to be true and they can not be denied or questioned in any collateral proceeding. It will be readily seen that under this rule any judgment not containing evidence in its record of its own invalidity should never be termed void, for whenever it is necessary to present proof *aliunde* to show its nullity it must necessarily be a voidable judgment. Such must be the case with a judgment fully reciting personal service, which is not contradicted by the record, when in reality there has been no such service. On its record it is a valid judgment, and the fact that there may be evidence *aliunde* the record which would show it invalid, does not make it void but places it in the category of voidable judgments. The following decisions sustain the rules enunciated: Fitch v. Boyer, 51 Texas, 336; Williams v. Ball, 52 Texas, 603; Murchison v. White, 54 Texas, 78; Stegall v. Huff, 54 Texas, 193; Long v. Brenneman, 59 Texas, 210; Collins v. Miller, 64 Texas, 118; Williams v. Haynes, 77 Texas, 283; Martin v. Cobb, 77 Texas, 544; Hardy v. Beaty, 84 Texas, 562.

This matter is thus discussed by Mr. Freeman, section 116: "Some judges, while refusing to permit any inquiry beyond the record, to show that a court, when pronouncing judgment, did not have jurisdiction over the defendants, have nevertheless said that a judgment without such jurisdiction is void, but that rules of evidence dictated by public policy exclude such testimony, not in the record, as is necessary to make its void nature apparent. But the word 'void' can with no propriety be applied to a thing which appears to be sound, and which, while in existence, can command and enforce respect, and whose infirmity can not be made manifest. If a judgment rendered, without in fact bringing the defendants into court, can not be attacked collaterally on this ground, unless the want of authority over them appears in the record, it is no more void than if it were founded upon a mere misconception of some matter of law or of fact occurring in the exercise of an unquestionable jurisdiction. In either case, the judgment can be avoided and made *functus officio* by some appropriate proceeding instituted for that purpose; but if not so avoided, must be respected and enforced."

While there is much confusion and seeming conflict among the Texas decisions as to what are void and what merely voidable judgments, one thing is settled, it appears, and that is, when the recitals in the judgment are such as to demonstrate the impossibility of there having been jurisdiction of the person or subject matter, the judgment is void and

subject to collateral attack. In the case of Stegall v. Huff, above cited, it was said: "It is a well established general rule that if it affirmatively appears from the record, either that the court did not have jurisdiction of the subject or of the person by some mode of procedure authorized by law, where this is required, as by our statute governing proceedings in Justice Courts, then the judgment will be held void, even upon collateral attack." So in the case of Collins v. Miller, 64 Texas, 118, it was held that the judgment was subject to collateral attack because it appeared from the record that the court did not have jurisdiction of the person of the defendant. The same is held in Martin v. Cobb, 77 Texas, 544. Freeman in his work on Judgments, section 116, says: "If the want of jurisdiction over either the subject or the person appears by the record, or by any other admissible evidence, there is no doubt that the judgment is void. . . . To hold a judgment binding, when the record disclosed a want of authority over the defendant, would be to impeach rather than to sustain the absolute verity of the record."

Now the record in the case of the State v. San Antonio National Bank et al., shows that a judgment was rendered against an unknown owner of the land. In the judgment it is adjudged that "the plaintiff, the State of Texas, do have and recover of the defendant, unknown owner, etc.," and the tax lien is foreclosed on land upon which the tax debt was due. At the time the judgment was rendered there was no law in effect by which an unknown person could be cited, unless he was the heir of some known ancestor, whose name was required to be set out in the citation by publication authorized by law. (Sayles' Rev. Stats., art. 1236.) The only other persons allowed to be cited, except by personal citation, are nonresidents of the State, absentees from the State, transients or persons whose residences are unknown. (Article 1235.) No provision whatever was made, prior to the Act of April, 1897, and which did not become a law until August, 1897, for citing an unknown person in any case. At that time the Legislature, no doubt recognizing the inability of the State to collect taxes on lands owned by persons unknown, made provision for citing them by publication of notice, the details of which are given, for three consecutive weeks in some newspaper in the county, or if none, in one in an adjoining county. (Sayles. Stats., art. 5232o.)

To realize and make valid the citation of an unknown person prior to that law, it must be held that one of the two cited articles of the statute can be used and that its use will constitute legal service. It must be kept in view that in order to invoke process by publication in either of the statutory cases in which it is allowed, the party seeking it must make a certain affidavit, and unless that is done such service will not be legal. For instance, in case of unknown heirs, the process is allowed only when property has been granted or has accrued to such unknown heirs, and when a person has a claim against them relative to such property, and he must make oath that the names of such heirs are unknown. So in the case of a nonresident, oath must be made that the defendant is a nonresident. It would be giving a very liberal interpretation to the two articles to permit process to be issued on an affidavit that the defendant is unknown. Such laws are not liberally interpreted, however, but strictly construed. (Edrington v. Allsbrooks,

21 Texas, 186; Hill v. Faison, 27 Texas, 431; Allen v. Wyser, 29 Texas, 153; Byrnes v. Sampson, 74 Texas, 79.)

The matter before this court has not been passed upon directly by any court, so far as we know, but in all cases involving any question as to the citation of unknown parties the legality of the action is measured and determined by the terms of statutes authorizing such citation, and in every case it is held that there must be strict compliance with the terms of the statute. How could strict compliance with the terms of some other statute, not enacted for the purpose, answer the demands of the law? We do not believe that process by publication in the only two statutes pointed out, would have any application to a person unknown, other than unknown heirs of a known person, as set out in one of them. It follows that there was no method of citing an unknown person at the time the judgment was rendered, and that the recitation of service on an unknown person being a legal impossibility the judgment thereby impeached itself and was void and should not have been admitted in evidence. In the case of Bailey v. Morgan, 13 Texas, 342, this proposition is sustained and it is in effect held that our statutes do not authorize service of citation by publication on unknown persons, not the heirs or legal representatives of a deceased party. See also, Caplin v. Compton, 5 Texas Civ. App., 410.

We have kept in view the rule, so ably presented by counsel for appellees, that all reasonable presumptions must be indulged in favor of the judgments of domestic courts of general jurisdiction. But presumptions are indulged in the absence of facts and not over and in contradiction of them. When a recital in a judgment shows a state of case in which legal service could not have been obtained, it would be absurd and unreasonable to indulge in presumptions that it was obtained. Presumptions are indulged in as to facts and never in opposition to law, or without the support of law to sustain the presumption. In Treadway v. Eastburn, 57 Texas, 209, the court said: "If the uncontradicted recitals in the record show affirmatively that the court did not have jurisdiction over the subject, or that the jurisdiction over the person did not attach, then a presumption to the contrary will not be indulged." After holding that the whole of the record should be taken together to determine whether there has been proper service, the court proceeded: "When thus considered, if that portion which relates to this question shows affirmatively such character of service as is not authorized by law, or such defective service that a judgment rendered thereon would be void, and not voidable only, and the remainder of the record is silent upon this subject, not showing any finding of the court from which it may be inferred that there was other service or an appearance, then this would be a case in which it affirmatively appears that the jurisdiction of the court had not attached." By the record or judgment roll, referred to as being proper to consider in determining the validity of a judgment, is meant at least the process filed in the suit, the judgment itself and the pleadings of the parties, and these may be looked to in attacking or sustaining the judgment. In this case the recitals of the judgment were not, in fact could not be, aided by other portions of the record.

All of the other assignments of error up to and including the eleventh

are attacks upon the judgment, the order of sale and the sale under the judgment, and having held the latter void it is not necessary to discuss them.

We think the evidence in the case on limitations was sufficient to go before the jury. The mere fact that the Nueces River, which formed one side of the enclosure of the land, at times went dry would not as a matter of law show a want of adverse possession. If all the facts and circumstances show that there was actual, visible, exclusive possession of the land, that would be sufficient, although at times there were breaks in the enclosure that surrounded the land. The evidence would be sufficient if it showed such acts upon the part of appellees, and those under whom they claim, as conveyed notice to the world that they claimed the land. As said in Richards v. Smith, 67 Texas, 610: "We do not think an actual enclosure, by fence or otherwise, necessary in all cases to give an exclusive possession. . . . When the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it, adverse to all others, and this is accompanied by an actual possession exclusive in its character, then limitation will run in favor of the person so asserting adverse claim and enjoying an exclusive possession from the time such exclusive occupancy began, whether the land be enclosed or not." For instance, if a man go into possession of a tract of land and cultivates and uses it, claiming it as his own, the possession would be adverse although the land was not fenced. Again, if a man claimed land within certain limits and herded his stock thereon and used the timber and performed other acts of ownership, he might perfect title by limitation, without the aid of an enclosure. The latter is merely evidence of hostile occupancy of land, but not the only evidence. If the evidence in this case should show such acts of open and exclusive possession of the land in controversy, as to give notice of an adverse claim to it, it would be sufficient, although the river forming a boundary was at times in such a condition that cattle placed on the land might escape. This court is not in a position to render a judgment on the evidence as to limitation because it was not passed upon by the jury, but was withdrawn by the court. That issue must be tried on the facts.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed.