JESUS CUELLAR v. B. J. DEWITT.

No. 110.

1. **Adverse Possession—Prescription.**—The acts and declarations of a claimant to land under and by prescription, made after the bar of the statute, are admissible to show that possession of the land was not adverse. Bracken v. Jones, 63 Texas, 184.

2. **Same.**—A claimant to land under unrecorded deeds, whose title has become perfect under the ten years statute of limitation, by his seeming willingness to accept another deed to one-half of the land from his vendor, can not be considered as admitting that his possession was not adverse.

3. **Community Homestead—Limitation.**—That the land was a community homestead, and claimant's (vendor's) wife did not join in his deeds, did not prevent the statutes of limitations from running.

ON REHEARING.

**4. Limitation.**—Hussey v. Moser, 70 Texas, 42, is conclusive of this case on the question of limitation running against the wife in case of a homestead not her separate property. The ground for holding that limitations will run against a wife in the case of a homestead when it is not her separate property is, that she can sue alone for the enforcement of her homestead rights should her husband refuse to join her.

**5. Estoppel.**—See opinion on rehearing for facts held not sufficient to constitute an estoppel.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*McLeary & Fleming*, for appellant. — 1. The pre-emptor, Jose Musquiz, had complied with the pre-emption laws in regard thereto, and the equitable title to the land vested in him. He sold the land to appellant, who had continuously lived on the land, claiming same adversely to the whole world, cultivating and using the same as his home, for more than sixteen years. He had acquired title thereto by the ten years statute. Word v. Drouthett, 44 Texas, 369; Bridges v. Johnson & Muldrow, 69 Texas, 714.

2. The statute runs in favor of one who holds adverse possession of the land that is claimed by the plaintiff to be a homestead, as well as it does when it is claimed to be a mill, or a store, or a pond. Hussey v. Moser, 70 Texas, 42; Simonton v. Mayblum, 59 Texas, 7; Smith v. Uzzell, 61 Texas, 221.

*T. P. Shields* and *L. N. Walthall*, for appellee.—The statute of limitations does not run against the State; and one claiming title to land under or by virtue of the statute of limitations must show occupancy of the same for the period of time prescribed under the statute by which he claims, and that his occupancy has been actual, continued, visible, notorious, distinct, hostile, and adverse to the claim of all the world. Rev. Stats., art. 3200; Trueheart v. Babcock, 49 Texas, 249; Word v. Drouthett, 44 Texas, 365.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellee to try title to 160 acres of land in Bexar County. Appellant pleaded not guilty and the statute of limitations of three, five, and ten years.

We deduce from the record the proof of the following facts, to-wit:

1. On May 2, 1871, Jose Musquiz, applicant, and Isabel Rodriquez and Ildefonso Leal, witnesses, made a sworn application for pre-emption and designation of land under an act approved August 12, 1870.

2. On the 28th of December, 1874, affidavit was made by the three last above named, before the district clerk of Bexar County, that said

Jose Musquiz, a citizen of said county, was a bona fide settler on 160 acres of vacant public land, situated in Bexar County, and surveyed for him on May 6, 1871, by the deputy surveyor of said county; that he had occupied and improved the same as a homestead for three years beginning on May 1, 1871; that he was a married man, and that he made the affidavit for the purpose of obtaining a title to the same under the Act of March 24, 1871, and that he had no other homestead. The two last affidavits were properly filed in the Land Office.

3. On February 26, 1889, a patent was granted by the State to Musquiz by virtue of the affidavit last above set out, of date December 28, 1874, being to the 160 acres of land in controversy.

4. On October 2, 1878, Jose Musquiz executed a deed to appellant, which was acknowledged on July 8, 1879, to the land in controversy. This deed was not recorded, but was filed in the General Land Office.

5. On May 22, 1875, Jose Musquiz executed a deed to the land in controversy to appellant, and acknowledged it on same day. This deed was not recorded.

6. On August 30, 1889, Jose Musquiz, joined by his wife, Juana Aquinana de Musquiz, executed a deed to B. J. Dewitt, appellee, to the land sued for, and duly acknowledged the same, and on same day it was duly filed for record in Bexar County.

7. That appellant went into possession of the land in controversy in 1875, and made improvements thereon, and held continuous adverse possession of the same up to the time the suit was filed, to-wit, 9th day of May, 1890.

8. That appellee, who is attorney at law, before his purchase had been employed by his vendors to institute suit for the land in controversy against appellant, and had actual notice of his possession of the land and his claim to it.

Judgment was rendered for appellee for one-half the land sued for.

As deduced from the foregoing facts, we herein after enunciate our conclusions of law.

The evidence establishes the fact that in 1875 appellant went into possession of the land in controversy, built his house thereon, and improved a portion of the land, and from that time until suit was instituted was continuously in open adverse possession of it, cultivating, using, and enjoying the same. It is true that the house was one constructed of "mesquite pickets stuck in the ground and covered with grass," but it was the home of appellant for sixteen years, and under its thatched roof he and his wife had reared a family of children, and it was permanent enough to shelter his family during the long years, and to proclaim to the world that he had made his habitation and abiding place there. Here he had also constructed a rude fence about some 25 acres of the land, and had during his sixteen years possession cultivated it and enjoyed its fruits, claiming

it as his own.   It does not matter that when he went into possession it was the homestead of Musquiz and wife, and she did not join in the deed; the statute began to run, and in ten years appellant had a good and perfect title.   Smith v. Uzzell, 61 Texas, 220; Branch v. Baker, 70 Texas, 190.

We judge from the land having been divided between the litigants that the trial judge must have concluded that the conduct of appellant after his title to the whole tract had been or would have been perfected by limitation, indicated that as to one-half of the land appellant had not been holding the land adversely to the owner.   Upon the construction placed on the testimony of appellee rests the decision of the case.   Appellant showed by irrefragable proof that he had for sixteen years been in open, continuous adverse possession of the land under deeds from Jose Musquiz, which were not recorded, and he had obtained a perfect legal title to the land by prescription to the whole of the land, unless the fact of his coming into the office of appellee with Musquiz and wife to have a deed made by them to one-half of it was an admission on his part that as to one-half of the land he had not been holding adversely to Musquiz and wife.   There can be no doubt that the acts and declarations of a claimant to land under and by prescription, made after the bar of the statute, are admissible to show that possession of the land was not adverse. Bracken v. Jones, 63 Texas, 184; Church v. Burghardt, 8 Pick., 328.

The weight and effect to be given such acts and declarations, the condition of the parties, the circumstances surrounding the act or declaration, and the motive back of or responsible for either, must be passed upon and viewed in the light of the facts of each case.   This then becomes a case purely of fact.

Under article 3196, Sayles' Statutes, "whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."   Then, unless the adverse possession of appellant is disproved by his acts after the bar of the statute was otherwise complete, he must hold the entire tract.   It will not be argued for a moment that his acts could be used to show that he had parted with a title to half the land by his acts and declarations, any more than it could be done if he had a perfect and unbroken chain of title.

In Massachusetts it was held, in 1892, that where a man who was in possession of a tract of land, before the bar of the statute became complete, offered to buy out the owner, that this did not interrupt the running of the statute; and a charge of the lower court which instructed the jury, " that if the tenant did attempt to buy the land of Hadley, it would not be decisive against the claim he now asserted; that it might be that

having some doubt as to the validity of his title, he was willing to pay something for the land to avoid litigation,'' was approved.

In the case of Hand v. Swann, 1 Texas Civil Appeals, 242, it is held, that a letter written after the perfection of the title by limitation by the person in possession, to the owner of the paper title, in which it was admitted that the possessor had no deed to the land in controversy, and offered $100 for the land in order '' to quiet and clear titles of all cloud,'' that this did not show that the possession was not adverse. In addition, the party holding by limitation was an agent of the true owner, and told the latter before the suit that he would not think of pleading the statute against him. But he did it, and did it successfully. In these cases the motive in making the offers controlled the decision of the case, a desire to compromise not being deemed an admission that the possession was not hostile to the owner of the paper title.

To arrive at the motive actuating Cuellar in going to appellee to have a deed written to him for one-half the land is the difficulty that confronts us in this case. It is often a serious and difficult matter to arrive at motive and intent when all the facts and circumstances touching it are brought out fully and succinctly, and it becomes much more so when as imperfect a statement of facts is presented as confronts us in this case. Neither Musquiz nor wife are put upon the witness stand, and no witness testifies in regard to the visits of Musquiz and wife and appellant to appellee's office to have the deed written, except the appellee. What the consideration for the deed was to be is nowhere indicated, and whether Musquiz's claim to one-half the land was recognized, and this deed was to cover the balance, is not shown. No conversation that was held at the time is proven, and appellee says that he did not inquire what interest Cuellar had in the land, nor as to who was in possession, although he must have known Cuellar was in possession, as he swears that Musquiz and wife '' employed me to bring suit to put Cuellar off the premises and recover possession.''

Appellant does not testify about going to appellee's office, but he says: '' I paid taxes on the land for about six years, and I have lived on it with my family from May, 1875, to this date, 10th of December, 1891, claiming it as my own, using it as a homestead of myself and family. I have a wife and nine children, all of whom have been raised on this place.'' Juan Pablo Talamantes, a witness for appellant swears: '' I am acquainted with the Musquiz pre-emption in Bexar County, the land in controversy in this suit. Mr. Jesus Cuellar has lived on it continuously since 1875, and has used and claimed it as his homestead.'' Antonio Vasquez says: '' Mr. Cuellar has continuously lived on said pre-emption since 1875 up to this date, and has cultivated, claimed, and used the same as his homestead all during this time.'' Mrs. Sarah A. Lockhart swears, that '' from 1875 to 1887 I lived on a place adjoining the land in controversy. I

am acquainted with Mr. Jesus Cuellar, the defendant. I knew him in 1875, and know that he has lived on the tract of land in controversy from 1875 until I moved away from my place in 1887. He was cultivating and using the place as his home during all the time that I knew him."

To offset and set aside all this array of testimony as to adverse possession, we have the one act of appellant in going into appellee's office in company with Musquiz and wife to get a deed from them for one-half the land, and his acceptance of an offer afterwards to compromise with appellee. Must this act be construed as an evidence that his occupancy of the land had not been adverse, when he swears positively that it was adverse? May not his act have been the outgrowth of other motives than that of a confession that he had no title? There is no consideration shown for the transaction, and the testimony impresses us with the conviction that the whole transaction was one of an attempted compromise, actuated by a desire on Cuellar's part to avoid litigation and remove a supposed cloud from his title. There is nothing in the evidence to indicate any recognition of a superior title in appellee or his vendors. There was no element of purchase in the transaction, but rather one of seeking peace, avoiding strife, and shunning vexatious litigation. Musquiz had twice deeded to the appellant the whole of the land, and he had occupied adversely to the world, and the one act of seeming willingness to accept another deed from Musquiz does not establish that he had not held adverse possession of the land which he had bought and paid for.

It is perhaps unnecessary to say that when Musquiz complied with the law in regard to pre-empting the land, his right to it attached; and the conditions on his part having been fulfilled, the land was his, and he was entitled to a patent. De Montel v. Speed, 53 Texas, 339. This is only thrown out because counsel for appellee argues that the land was never severed from the public domain until the patent was issued in 1889. The patent was issued, however, by virtue of stipulations complied with in 1874, as will be seen by a reference to it.

Holding as we do, that a title to the whole of the 160 acres of land vested by ten years limitation in appellant, we hereby reverse the judgment of the lower court, and here render judgment for appellant for the whole of the land in controversy.

*Reformed and rendered.*

Delivered December 6, 1893.

### ON MOTION FOR REHEARING.

FLY, ASSOCIATE JUSTICE.—The motion for rehearing presents three grounds, which we will consider in their order. The first ground is, " that the court erred in finding that the affidavits filed to obtain a patent were in compliance with law, and that the appellant had perfected his title

by ten years limitation, because the affidavits refer to a different piece of land from that in controversy in this suit." We are unable to comprehend the force of this ground for a rehearing. The Musquiz title came through the affidavits upon which the patent is based, and appellant claims through that patent. In the patent the land is described as being located about seventeen and one-half miles west of San Antonio, by virtue of an affidavit made on December 28, 1874, and then by metes and bounds describing the land. The affidavit made in 1871 describes the starting point as being at the southwest corner of survey number 239¼, and then describes the land as it is described in the patent. The patent describes the starting point as being at the southwest corner of survey number 300⅛, and this it is argued shows that the Land Commissioner granted a patent to a different tract of land from the one applied for by Musquiz. There is no merit in this proposition. There is no question of the identity of the land in the case. Cuellar and his witnesses swear that the land sued for, which is described in the patent, is the same land that Musquiz settled on in 1871, and the same land that Musquiz sold to Cuellar. The affidavit referred to in the patent is that of date December 28, 1874, and that affidavit refers back to the affidavit of 1871. There is no affidavit of date May 28, 1874, as claimed in the argument of counsel. The affidavit of December 28, 1874, refers back to the survey made to the land in May, 1871. Appellee claims through the same affidavit and patent as appellant, and if the affidavit of Musquiz is not the basis of the patent, as the latter asserts, we can not see how appellee is in a position to be benefited by it. Musquiz was entitled to a patent in 1874, and could have received it by application and paying the necessary fees. Cuellar got the title of Musquiz, and the patent when issued was his.

As stated in the second ground for rehearing, a party can be estopped by his acts which mislead an innocent party and cause him to part with some right, but the principle does not apply to the facts in this case. Cuellar did not mislead appellee, and, indeed, could not have done it. Appellee is an attorney, and as such was employed by Musquiz to sue Cuellar. He must have known all the facts connected with the case, and certainly could not have been deceived by Cuellar coming into his office when a request was made for him to write a deed for Musquiz to sign. The facts in the case lead us to the conclusion that Cuellar, who was a Mexican, had in some way learned that the patent to the land had been issued in the name of Musquiz, and supposed that he ought to have another deed to the land, and went in company with Musquiz to the office of appellee to get it. This was not sufficient to deceive any one. The facts put appellee fully upon notice that appellant was in possession of the land and claiming it. The doctrine of estoppel has no standing in this case.

There can be no question as to the statute of limitation running against the wife of Musquiz. The case of Hussey v. Moser, 70 Texas, 42, is conclusive of this case on the question of limitation running against the wife in case of a homestead not her separate property. Musquiz and wife abandoned the place, and he conveyed it to Cuellar, acting in direct hostility to the homestead rights of the wife. The land was community estate. Kelley v. Whitman, 41 Texas, 647; Simonton v. Mayblum, 59 Texas, 7; Smith v. Uzzell, 61 Texas, 220. There is nothing in Hargadene v. Whitfield, 71 Texas, 488, that is in conflict with this doctrine. The ground for holding that the statute of limitation will run against a wife in the case of a homestead when it is not her separate property is, that she can sue alone for the enforcement of her homestead rights should her husband refuse to join her. If this is a legislative enactment engrafted on the law of limitations, as contended by counsel, this court is in no manner responsible for it. It is a question too well settled by decisions of the Supreme Court for this court to differ from it.

This disposes of all the grounds for a rehearing. We see no reason for changing our opinion. The motion is overruled.

*Motion refused.*

Delivered January 17, 1894.

Writ of error to Supreme Court refused February 10, 1894.