DRYDEN et al. v. MAKEY et al.

(Court of Civil Appeals of Texas. San Antonio. Oct. 15, 1913. On Motion for Rehearing, Nov. 12, 1913.)

1. ADVERSE POSSESSION (§ 85*)—RECOGNITION OF TITLE—EVIDENCE—SUFFICIENCY.

In trespass to try title, where defendants pleaded limitations, the evidence of one of the defendants that B. came to his house, stated that he owned some land in the vicinity, but did not know exactly where it was, and asked him to keep up the fences, that he thought B. referred to a place adjoining his, and repaired the fences thereon, was sufficient to support a finding that defendants did not agree to put a fence around the property occupied by them, thereby recognizing B.'s right to the land, though such evidence was sharply contradicted.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 313, 498–503, 656, 657, 660, 668, 688–690; Dec. Dig. §, 85.*]

2. ADVERSE POSSESSION (§ 116*) — ACTIONS — INSTRUCTIONS.

In trespass to try title, where defendants relied on limitations, and where the overwhelming evidence showed that the land was fenced in 1882, and for a number of years, but there was some evidence that it was fenced on only three sides in 1890 or 1891, an instruction that a failure to keep up the fences so as to exclude others from the land did not necessarily interrupt the running of the statute was not misleading.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66; Dec. Dig. § 116.*]

3. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

In trespass to try title, where defendants relied on limitations, it was not probable that a charge that a failure to keep up the fences so as to exclude others from the land did not necessarily interrupt the running of the statute harmed plaintiffs, even if erroneous, where the uncontradicted testimony showed that the land was cultivated, used, and enjoyed by defendants to the exclusion of all others for more than ten years.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

4. ADVERSE POSSESSION (§ 19*)—ELEMENTS—STATUTORY PROVISIONS.

Where land was cultivated, used, and enjoyed by a person to the exclusion of all others, for more than ten years, this met the demands of the statute of ten years' limitation, even though the land was not fenced.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 1, pp. 222–235; vol. 8, p. 7568.]

On Motion for Rehearing.

5. ADVERSE POSSESSION (§ 85*)—EVIDENCE—HOSTILE CHARACTER OF POSSESSION.

The acceptance by a party claiming title by limitations of a payment from another for repairing a fence on the land was admissible in evidence to show that his possession was not adverse.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 313, 498–503, 656, 657, 660, 668, 688–690; Dec. Dig. § 85.*]

6. ADVERSE POSSESSION (§ 115*)—QUESTIONS FOR JURY—RECOGNITION OF ANOTHER'S TITLE.

It was a question for the jury in the light of the facts of the case whether the acceptance by a party, after his title to land by limitations had been perfected, of a payment from another for repairing a fence on the land showed that his possession was not adverse.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

7. APPEAL AND ERROR (§ 1001*) — REVIEW — QUESTIONS OF FACT.

The verdict of a jury when sustained by evidence cannot be disturbed, no matter what the appellate court may think as to the relative standing and reputation of the witnesses for truth and veracity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

8. APPEAL AND ERROR (§ 1099*)—FORMER DECISION AS LAW OF CASE.

In trespass to try title, a holding on appeal that the evidence was sufficient to support a verdict for plaintiff did not prevent a holding on a subsequent appeal that the evidence on that trial was sufficient to support a finding that defendants had title by limitations.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–4379; Dec. Dig. § 1099.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by R. Fannie Dryden and others against J. H. Makey and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

See, also, 128 S. W. 633.

Lane, Wolters & Storey and L. C. Kemp, all of Houston, for appellants. Fred R. Switzer, of Houston, for appellees.

FLY, C. J. This is an action of trespass to try title to several lots of land in the city of Houston, instituted by Thomas Dryden, who died pending the suit, and the same was then prosecuted by his widow, R. Fannie Dryden, and his two daughters, Luella Lemon and Mary E. Corbly, each joined by her husband, against J. H. Makey and his wife, Jeannette Makey, Stanley Thompson, and Mrs. S. R. Bruce and her husband, J. S. Bruce. It was alleged that after the suit was filed appellants had acquired the title of S. R. and J. S. Bruce and Thomas Ronaldson. Appellees alleged that after the suit was instituted they had acquired the interest of Stanley Thompson in the land, and also pleaded ten years' limitation. Thompson filed a disclaimer. The cause was submitted to a jury on special issues, and upon the answers returned a judgment was rendered in favor of appellees J. H. Makey and Jeannette Makey.

[1] The jury found that Makey and wife did not, as pleaded by appellants, agree to repair or put a fence around the property, thereby recognizing the right of the Bruces to the land, and that Makey had been in peaceable adverse possession of the land in controversy for a period of ten consecutive years, using, cultivating, and enjoying the

same during the whole of that period. We are of the opinion that there was testimony which sustains the findings of the jury.

J. H. Makey swore that Dr. Bruce came to his house and stated that he owed some land in the vicinity, but did not know exactly where it was, and asked him to keep the fences up, and that he (Bruce) would pay him (Makey) $5. Makey stated that he thought Bruce referred to a place adjoining his, known as the Newman place, and he repaired the fence between his and the Newman place and in front also. He denied that he recognized Bruce as his landlord, and swore that he had held the land as his own since 1882. Makey was sharply contradicted by two witnesses; but the jury accepted his account of the matter. He was sustained as to his adverse possession of the land by a number of witnesses. Jeannette Makey, his wife, corroborated his account of what Bruce said about the land. This view of the testimony disposes of the first, second, third, and fourth assignments of error, which question the sufficiency of the evidence to sustain the findings of the jury as to hostile possession of the premises. There was ample testimony which, if believed by the jury to be true, sustained the answers of the jury to the questions submitted by the court.

[2-4] A part of the testimony tended to show that the land was fenced, and other parts of it tended to show that only three sides were fenced in 1890 or 1891, and it was not calculated to mislead the jury for the court to instruct the jury that a failure to keep up the fences so as to exclude others from the land did not necessarily interrupt the running of the statute. The overwhelming evidence showed that the land was fenced in 1882, and was fenced for years, and, if one side was down in 1890 or 1891, the court might well have assumed that the fence had once been up on all sides of the land. The only testimony that tends to contradict the statement that the land was fenced in 1882 was that of Chimene, who showed that he knew nothing about it. He said: "I didn't pay any particular notice as to whether the property I had owned was fenced or not; but I don't think it was." He was there, he said, in 1883 or 1885. He was not able to identify the property of which he was speaking with that in controversy. It is not probable that the charge, if erroneous, in any way harmed appellants. The uncontradicted testimony showed that the land was cultivated, used, and enjoyed by appellees, to the exclusion of all others, for more than ten years, and this would meet the demands of the statute of ten years' limitation, even though the land was not fenced. Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347.

The seventh assignment of error is without merit, and is overruled.

The judgment is affirmed.

## On Motion for Rehearing.

The opinion of the court is assailed on the ground that there was sufficient testimony to show that Makey and wife had not agreed to build a fence about the property for Dr. Bruce and hold the property for him. Makey swore positively in his ex parte deposition that he did not know that Bruce was claiming the property, and that he had been claiming the land 16 or 17 years before he ever saw Bruce. He said his occupancy of the land was continuous from 1882 up to the time he first saw Bruce. Jeannette Makey swore that Bruce stated that he did not know where the land was that he claimed; that she and her husband had lived on the place using and claiming it ever since they first moved on it. Makey and wife swore that the first time they saw Bruce was about 5 or 6 years before the trial which occurred in March, 1912, that is, in 1906. At that time Makey and wife had been claiming the land for 24 years. Bruce obtained a deed to the land in 1890, 8 years after Makey and wife went into possession of it. Bruce was uncertain about when he first talked to Makey; but, as he sent him the money for building the fence in 1899, it must have been about that time that he first went to the land. At that time Makey had been in possession of the land for 17 years, and had perfected a title by 10 years' limitation. Fred Kilpper swore that he moved into the neighborhood of the lot in 1882 or 1883, and Makey had it fenced at that time, and was cultivating it; that the place was kept continuously under fence. Robert E. C. Wilson swore that the Makeys were on the place in 1883, and that the land in controversy was fenced, and it remained fenced up to the time witness last saw it, in 1895 or 1896.

[5-7] It is clear that the acceptance of the $5 by Makey from Bruce as a payment for repairing a fence took place after the title had been perfected, and while admissible to show that the possession was not adverse, still it was purely a question of fact for a jury as to whether taking the money evidenced that there was no adverse possession. As said by this court, in Cuellar v. Dewitt, 5 Tex. Civ. App. 568, 24 S. W. 671: "The weight and effect to be given such acts and declarations, the condition of the parties, the circumstances surrounding the act or declaration, and the motive back of or responsible for either, must be passed upon and viewed in the light of the facts of each case." This was simply and purely a jury case, and, the jury having decided it in favor of appellees, and there being evidence to sustain their finding, no matter what this court may think of the relative standing and reputation of the witnesses for truth and veracity, the verdict cannot be disturbed.

[8] Appellants assert that, when this case was before this court on a former appeal (128 S. W. 633), it was held that the evidence

was sufficient to support the verdict. Of course, this court held no such thing, as it would have been quite improper so to do in view of a reversal. But, if it had so held, it would still be justified in holding that the evidence on the last trial sustained the finding that appellees have a title by limitations, although it may not have been technically correct to say that the uncontradicted testimony established that fact, and that expression will be withdrawn. The uncontradicted evidence, however, did show that the land was fenced in 1882 or 1883.

The motion for rehearing is overruled.