ZIMMERMANN et al. v. BAUGH.

(Court of Civil Appeals of Texas. San Antonio. Dec. 17, 1913.)

1. TRIAL (§ 139*)—QUESTIONS FOR JURY—DIRECTED VERDICT.

The court should not direct a verdict on an issue of fact unless the evidence shows that reasonable men could not draw a different conclusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. ADVERSE POSSESSION (§ 115*)—ACTIONS—EVIDENCE.

In trespass to try title, where plaintiff claimed under a prescriptive title, evidence held to raise a question for the jury and not to warrant a directed verdict in plaintiff's favor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

3. EVIDENCE (§ 213*)—ADMISSIONS—TITLE.

In trespass to try title, evidence that plaintiff offered to purchase a deed from defendants to the property is inadmissible, for that fact will not affect plaintiff's title, being a mere attempt to remove a possible cloud.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751, 753; Dec. Dig. § 213.*]

Error to District Court, Bexar County; A. W. Seeligson, Judge.

Action by W. Pauline Baugh against Bridget Zimmermann and others. There was a judgment for plaintiff, and defendants bring error. Reversed and remanded.

See, also, 160 S. W. 593.

Don A. Bliss, of San Antonio, for plaintiffs in error. Augustus McCloskey and Alex C. Bullitt, both of San Antonio, for defendant in error.

CARL, J. The defendant in error, Mrs. W. Pauline Baugh, brought this suit in trespass to try title against plaintiffs in error, Mrs. Bridget Zimmermann, Florence, and Minnie Zimmermann, the land in controversy being a small triangular piece out of what is designated as the north part of lot 7 in block 18, New City block 525, in the city of San Antonio, Bexar county, Tex., and is more fully described by metes and bounds in plaintiff's (defendant in error's) petition. The plaintiff below asserted title in herself under the three, five, and ten years' statutes of limitation, but relied in the proof on the ten

years' statute. Plaintiffs in error answered by the usual plea of "not guilty," and relied on a record title to the land, which it was admitted was regular, from the city of San Antonio down to and including them.

[1, 2] At the conclusion of the testimony, the court instructed the jury to return a verdict in favor of Mrs. Baugh, the plaintiff there, which was accordingly done. Whether the court was correct in so instructing the jury is the issue before this court. If the evidence is such that reasonable minds would not differ as to the facts established, the court was correct in giving the instruction.

Let us, then, see what the evidence is. Mrs. W. Pauline Baugh, the plaintiff below, testified that she had owned lot 5, block 18, N. C. B. 525, twenty-seven years; that she inherited it from the Kelleys in 1885, and they had bought the property from Elliston. She says: "I meant this part in controversy —this part was all fenced and is fenced now, and has been ever since I came to San Antonio, which was in 1877." Her evidence is, further: That she had had the property fenced in with lot 5 twenty-eight years and had kept it rented out; the part in controversy being used as a passageway for her tenants in going to and coming from Chestnut street. "That fence I had was up there until two years ago. It had been repaired from time to time. It was standing up there until Mrs. Zimmermann changed the line. Q. Do you know who lived on that little piece of ground that inclosed the red triangle (the land in controversy)? A. Well, there was a man by the name of Pieper. He didn't live on it; he rented it out. I do not know who had it prior to that; I do not know who his tenants were. They have had tenants there about 28 years, I presume." The witness, upon redirect examination, said she had reference to the large triangle, but not the land, in dispute, which she said she and those under whom she held had had fenced since 1877 when she came to San Antonio.

J. W. Houston, who was called by defendant in error, said he had lived in San Antonio 34 years and had known this property all his life. He says: "I remember well the location of the fence of that property with reference to the streets. * * * I know there was a fence in there through to what we called McGowan's. The fence did not take in the little triangle (property in controversy). The little triangle wasn't there then; Baugh's fence didn't fence in any triangle. It came to the point of the triangle and stopped at the triangle, and the triangle extended about three or four feet from the south fence of the Baugh property. No sir, the south fence was not a little longer, the north fence was the longer; and, when this south fence came down, it struck a little triangle, just a little nose of a property that

came in there just like the point of the triangle."

J. R. Studer, for plaintiffs in error, said that he had resided near the property for close to 20 years. He says that Pieper fenced the entire block 7. "I don't know who built that cross-fence. There was a closet built back there somewhere. My father-in-law (Pieper) had it done. There was no fence which included that when it was built 16 to 18 years ago. When that closet was built, the fence did not come right along the side of Chestnut street. It was open—most of the years there was nothing at all. I don't remember any more whether when the fence was put up across there they tore down any portion of the old fence that I have said fenced in the entire lot 7. I patched it up so much I got disgusted. * * * I don't know when the fence running across was built so as to cut off this little piece (in controversy). Whoever did that did it without my knowing anything about it. When I first knew of it was maybe six or eight years ago." Studer says that 16 or 18 years ago the land in controversy was open, and he also says that the north corner of the land in dispute is in the same place it has always been and has not been changed. "I knew that the land in controversy was inside my father-in-law's fence at the time I first knew it (about twenty years). There was not any cross-fence there just prior to that time. It was fenced at the time he (Pieper) bought it." So the state of the evidence is that Mrs. Baugh says her fence was up there until about two or three years ago, when it was knocked down. Houston says this little triangle was out, not fenced at all when he can first remember, and he is 34 years old. Studer says Mrs. Baugh's fence was not there when Pieper bought the property about 20 years ago, and that Pieper built a closet on the property in controversy about 18 years ago. He says further that it was under fence before Pieper bought it.

We think the condition of the evidence was such that reasonable minds might honestly differ, and that the court erred in refusing to submit the case to the jury. Choate v. Railway, 90 Tex. 88, 36 S. W. 247, 37 S. W. 319; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758. "It is only when it is so clearly established from the undisputed testimony as to admit of no other reasonable hypothesis or conclusion that either a fact essential to plaintiff's action is not proven, or one which is a complete defense has been shown, that it becomes the duty of the court to instruct a verdict for the defendant." Southern Pacific Ry. Co. v. Winton, 27 Tex. Civ. App. 514, 66 S. W. 483, and cases cited. The possession and use by Mrs. Baugh is not so conclusively shown as to take the case from the jury.

[3] It is a matter of no consequence that

Mrs. Baugh may have offered $35 for a deed from the plaintiffs in error to this property. Citizens have a right to clear their titles of those things which would hinder a sale, and, if they have title to the property, a mere attempt to remove clouds therefrom would not affect the title they already have. This court so held in Cuellar v. Dewitt, 5 Tex. Civ. App. 568, 24 S. W. 671, and has recently reaffirmed the same doctrine.

Since we have concluded to reverse the judgment, it is not necessary to pass on any other questions raised.

The judgment is reversed, and the cause remanded.