KIRLICKS et al. v. TEXAS CO. et al.
(No. 7448.)

(Court of Civil Appeals of Texas. Galveston. Jan. 23, 1918. Rehearing Denied Feb. 28, 1918.)

1. APPEAL AND ERROR &#9655;230 — OBJECTION BELOW—PEREMPTORY INSTRUCTION.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, providing that objections to the charge, which shall be in writing and submitted to the parties for examination and objection, shall be waived unless presented to the court before the charge is read to the jury, does not apply to a peremptory instruction, but only in actual jury trials.

2. MINES AND MINERALS &#9655;78(1)—OIL LEASE—WELLS TO BE DRILLED.

An oil lease, providing that if oil is found in paying quantities in the first well, the lessee will, in 30 days, begin boring a second well on some other acre of the tract, and continue to bore as developments may justify, till at least five or six wells have been completed, "or the acre on which the lessee has failed to drill a well reverts to the lessor," by written notice to that effect being served, is at least ambiguous as to whether it does not require a well to be drilled on each acre, and not merely two on different acres, and three more anywhere, presenting a question for the jury under evidence of fact and circumstances that may throw light thereon.

---

&#9655;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. MINES AND MINERALS** ⬅78(7)—OIL LEASE —FORFEITURE—PLEADING.

Pleadings as a whole, in action by lessee in oil lease, for price of oil sold, in which the purchaser interpleaded others, *held*, under the principle that a tenant may not deny his landlord's title, to disclose such interest in the land in those so brought in as to entitle them to a hearing on the issue of forfeiture of lease.

**4. MINES AND MINERALS** ⬅78(7)—OIL LEASE —FORFEITURE—QUESTION FOR JURY.

Evidence *held* to make an issue for the jury on the question of forfeiture of an oil lease by failure to drill required wells and abandonment of operations.

**5. TRIAL** ⬅143—TAKING CASE FROM JURY.

The evidence raising an issue, failure to submit it is error, notwithstanding any preponderance of the evidence.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by H. R. Decker against the Texas Company and another, others being interpleaded by the Texas Company. Peremptory instruction was given for plaintiff, and John A. Kirlicks and others bring error. Reversed and remanded for new trial.

McMeans, Garrison & Pollard, of Houston, for plaintiffs in error. Carothers & Brown, of Houston, for defendants in error.

GRAVES, J. H. R. Decker sued the Texas Company and John A. Kirlicks, in part alleging:

"That heretofore, to wit, on the 15th day of May, A. D. 1909, J. B. Brockman, Elizabeth Dunman, John A. Kirlicks and other parties, who were then the owners in fee simple of the tract of land hereinafter described, made, executed and delivered to the plaintiff their certain lease in writing, by the terms of which, for and in consideration of $10 and other considerations, they demised, granted and leased to said Decker, his heirs and assigns, all the oil and gas to be found above 'Cap Rock' in and under the following described tract of land," etc.

After further declaring that he had complied in all respects with the terms of the lease, which was to run ten years, Decker then pleaded that he had bored a number of producing wells on the land, and during the year 1913 had produced therefrom and delivered to the Texas Company 691.19 barrels of oil at the agreed purchase price of $1 per barrel, but that John A. Kirlicks and others, claiming the oil, had notified the Texas Company not to pay him therefor, which the company had accordingly refused to do; that they were asserting title both to the land and the oil produced therefrom, contending that Decker's lease was invalid, or had been forfeited, which claims had cast a cloud upon his own title to the premises and the oil. He prayed that the Texas Company be required to bring in as parties to the suit all persons who were asserting any interest in the oil in its possession, in order that their claims might be adjudicated therein, that he have judgment for the value of the oil, and that these clouds so cast upon his title to the premises and the oil thereupon be removed

and canceled, etc. More extended reference to the terms of the lease will hereinafter be made. The Texas Company answered that it was merely stakeholder, but had been notified, as charged by Decker, by Kirlicks that he and the other landowners claimed the oil, offered to pay the money value thereof into court, and brought into the suit Gussie M. Kirlicks, wife of John A. Kirlicks, Mrs. Sadie Conoway, a widow, Henry F. Fisher, George Sears, and L. S. Warnecke, who were alleged to be the owners of the land. Although both were served, neither Sears nor Mrs. Conoway answered, but the others thus vouched in, joined by John A. Kirlicks, one of the two original defendants, filed answers, attaching thereto full copy of the lease so declared upon by Decker, denying that the latter was entitled to the proceeds of the oil sued for, or to the other relief sought, and alleging in much detail that he had failed in several respects to comply with the terms and conditions of the lease, in consequence of which he had forfeited in whole and in part all rights thereunder. By way of cross-action, they further charged that Decker had wrongfully used $500 worth of fuel oil from the land, for which they asked judgment. Details of these answering averments will likewise be later herein recurred to. At the close of the evidence the court took the entire case from the jury, and by peremptory instruction directed a verdict for plaintiff, upon the consequent return of which judgment was entered against all the named defendants for the $691.19 held by the Texas Company as stakeholder, that they take nothing by their cross-action against Decker for the value of the alleged fuel oil, and that the clouds cast upon the latter's title to the leasehold premises by the claims of forfeiture asserted by all the defendants—other than the Texas Company—be removed. From that judgment this appeal is prosecuted through writ of error by John A. Kirlicks, Gussie M. Kirlicks, Mrs. Sadie S. Conoway, and L. S. Warnecke; H. R. Decker, H. F. Fisher, the Texas Company and George D. Sears being made defendants in error. The court's peremptory charge was given to the jury on October 29, 1915. The verdict of the jury was returned on the same day. On October 30, 1915, the plaintiffs in error filed certain exceptions, claiming that the court had erred in giving this charge. The record contains no bill of exceptions, order of court, nor other evidence that objections were presented to this charge before it was read to the jury and were overruled by the court, and that exception was duly reserved.

[1] Under these conditions, since all of the assignments carried into the brief of plaintiff in error are based upon alleged error of the court in so giving the peremptory instruction, objection is at the outset presented to

this court's consideration of any of the assignments, upon the ground that all objections thereto were waived by the failure to object before it was read to the jury, as is provided by article 1971, Vernon's Sayles' Statutes (Acts 33d Leg. p. 113, § 3). But we are unwilling to so hold, believing as we do that this statute does not apply to a peremptory instruction upon the whole case which takes from the jury the right to pass upon the facts. In at least two preceding cases this court has declined to so apply it, and, despite a contrary holding by others of our Courts of Civil Appeals, we still think that the correct conclusion. See Conn v. Houston Oil Co., 171 S. W. 522; Railway Co. v. Higginbotham, 173 S. W. 484. Prior to the announcement of this court's view in these two cases, however, there had arisen a conflict in 'decision over the question between other Courts of Civil Appeals, and the matter is now pending before the Supreme Court on a writ of error granted by it because of such conflict, in the case of Walker v. Haley, 181 S. W. 559. A collation of most of the cases on the subject is there made, to which may be added the following: Thorne v. Dashiell, 189 S. W. 986; Carr v. Bank, 189 S. W. 988; Huling v. Moore, 194 S. W. 194; Byrne v. Tex. L. & L. Co., 198 S. W. 600. In these circumstances, we neither feel it our duty to now refrain from determining the issue in accord with our own conviction because of a previously existing conflict in the holdings thereon of like courts of no greater authority, nor to uncertainly delay the prompt dispatch of business in this court by certifying to the Supreme Court the precise question already for some time pending undisposed of there. We, therefore, proceed to here pass upon it.

From the opinions in the cases referred to, it will appear that the Amarillo court is so far the only other one of our appellate courts holding that the statute in question has no application to a peremptory charge; but that court bases its conclusion upon the opinion that the giving or refusing of a peremptory instruction raises a question of fundamental error, and should be reviewed upon appeal, whether excepted to or not. While concurring in the conclusion there reached, we do not rest it upon the same ground. It seems to us that the very terms of the statute itself contemplate that it should only be applicable to trials before a jury upon controverted issues of fact. Its provisions in full are as follows:

"Art. 1971. The charge shall be in writing and signed by the judge; after the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived; before the argument is begun, the judge shall

read his charge, and all special charges given by him to the jury in the precise words in which they were written; he shall not charge or comment on the weight of evidence; he shall so frame the charge as to distinctly separate the questions of law from the questions of fact; he shall decide on and instruct the jury as to the law arising on the facts, and shall submit all controverted questions of fact only to the decision of the jury."

Just how the delivery of a written charge to the jury on the law of the case could have reference to a situation where no jury was necessary does not readily occur to us; for the action and authority of the judge under a peremptory instruction determining the entire case seems to us of similar import to his action in ending the whole controversy in other ways, such as in sustaining a general demurrer to the evidence, or a plea to the court's jurisdiction to entertain the matter before it at all. If this kind of general charge had been intended to apply to these instances in which the judge alone could terminate the entire case, and no jury's guidance in matters they had the province and authority to pass upon, that is, controverted issues of fact, was to be provided thereby, why require it: (1) To be in writing; (2) to be submitted to the litigants for written objections; and (3) to be read to the jury; and all this after the evidence has been concluded, and before argument to the jury is begun? No such elaborate procedure was necessary. Nor is it any answer, we think, to say that a peremptory charge "is a concrete application of the law of the case to the facts," for the reason that these detailed terms and requirements of the statute reasonably contemplate that something determinable by them should be left before the jury, to which the charge could properly relate.

Moreover, the provisions of succeeding article 2061, Vernon's Sayles' Revised Statutes, that the ruling of the trial court in giving, refusing or qualifying of instructions to the jury shall be regarded as approved, unless excepted to as provided for in foregoing articles, cannot aid the contention that the preceding article 1971 applies to a peremptory charge, because our Supreme Court in Railway Co. v. Dickey, 187 S. W. 184, has directly held that it concerns special instructions only, and has no reference to the general charge, with which alone article 1971 deals.

We think the plain major purpose of the Legislature in this statute, enacted as it evidently was in response to the need for more simplified procedure, especially upon appeal, was to give the trial judge in actual jury trials every opportunity to eliminate any errors from his general charge before submitting the fact issues therein squared with the law to the jury for their determination, thereby reducing the probabilities of new trials and reversals, and that its thought was not upon such summary and independent action as may be taken by the judge alone

when, by peremptory charge, he removes the controversy from the consideration by the jury.

Under these views, we overrule the objection.

Looking, then, to the merits of the assignments, and after a full consideration of the pleadings and evidence, we conclude that two separate issues of fact were raised, which should have been submitted to the jury: (1) What was the meaning of the lease contract with reference to whether or not, after the first two wells, a further well should have been drilled upon each additional acre of the land; (2) whether or not Decker had forfeited the lease, in whole or in part, by reason of any failure upon his part to comply with its terms.

[2] The provision of the lease regulating the manner of drilling the wells, was the following:

"7. It is further agreed that in the event oil is found in paying quantities in said first well, then the lessee agrees and covenants that within thirty days from the completion of such successful well he will begin the boring of a second well on some other acre of said tract herein leased, and continue to bore additional wells upon the tract herein leased as developments may justify, until at least five or six wells have been completed, or the acre upon which said second party has failed to drill a well reverts to the first party by written notice to that effect being served upon said second party by said first party."

There was a sharp controversy between the parties as to the meaning of this paragraph of their contract with reference to other wells after the first two; Kirlicks and associates claimed that it obligated Decker to drill one well on each additional acre of the entire 20 acres, while the latter contended, and the court seems to have held, that he was only required to drill a total of five wells upon the whole of the land, only the first two of which must be upon different acres, the location of the remaining ones being left to his judgment. The evidence was undisputed that five wells in all were drilled, four of them upon the same acre, and the other one upon a different acre.

We are not prepared to say the contract did not contemplate the drilling of an additional well, after the first two, upon each acre of the balance of the land. Just how the acre (that is, any acre) of the land upon which the lessee had failed to drill a well could revert to the lessors, as provided in the concluding clause of the quoted part of paragraph 7 of the lease, is not clear to us, unless the drilling was thereby meant to be by the acre, especially as there was some evidence tending to show that the tract was laid off in acre blocks, or at least was so treated by the parties to the lease. At best we think there was ambiguity in the contract in this respect, and that the question of its real meaning, under the intention of the parties, and such other facts and circumstances as would throw light upon it, should have been submitted to the jury for a finding.

It was pointedly material for the precise obligation undertaken by the lessee to be clearly defined, in order to further determine the equally pertinent question as to how he had discharged it.

[3] In reference to this last-mentioned question, we think the issue of forfeiture also was clearly raised by both pleadings and proof, contrary to the contention of defendant in error Decker, and that his further position that plaintiffs in error did not, by either pleadings or proof, disclose such interest in the land as entitled them to a hearing upon the issues they tendered in reply to his suit, or to any relief, is not well taken. It seems to us that this latter contention discounts the initial attitude of defendant in error Decker in bringing his suit, and the subsequent effect of the judgment he took therein. It must here be recalled that he brought the suit and specifically declared upon the lease in question, under the allegation that John A. Kirlicks and others therein named were the owners in fee simple of the land to which it related, and that as such owners they had executed and delivered to him the very instrument under which all the rights he now asserted accrued to him, and that it was at his instance that all of the defendants there were brought into the suit for the avowed purpose, as against those particular persons, of establishing the rights so claimed. Indeed, the Texas Company, whom he originally sued for that express purpose, not only brought in all the other defendants except John A. Kirlicks, who was an original defendant, under the averment from information and belief that they and Kirlicks were the owners of the land, but further set out that, in giving it the written notice of the claim of such owners to the oil in its hands, as had been charged in paragraph 5 of Decker's petition, John A. Kirlicks had done so for himself and as attorney for all other owners; and upon the trial Kirlicks so testified without objection.

Moreover, after being thus summoned in that character of suit, the previously named defendants who answered, after admitting execution and delivery by them of the lease sued upon and setting up a full copy of it, repeatedly alleged their ownership of the land, declared their consequent right and title to its possession and proceeds in and from oil, and in minute detail charged Decker with having violated practically every one of his obligations under the lease, and that he had accordingly forfeited, all and singular, his rights thereunder. True they did not specifically pray for a cancellation of the lease, but time and again, after denying that plaintiff Decker had any rights under it, reiterated that "the owners of the land" were entitled to that relief also, as well as that above detailed.

In replying to these answers by supplemental petition, Decker not only conceded that Kirlicks and the other owners were en-

titled to the royalty oil as prescribed by the terms of the lease, which he asserted had been paid to them, but for all the purposes of the suit repeatedly admitted, as we think, that they did have such substantial interest in its subject-matter, that is, the land and the oil produced therefrom, as entitled him to the affirmative relief against them he therein sought; one of several similar averments to this effect being the following:

"That the defendant Kirlicks did, about the time that he alleges, make claim that the plaintiff had forfeited his lease, but never attempted to take possession of said wells or operate them, and that prior to his claim of forfeiture as alleged, he, together with all of the other owners of the land, received without question their royalty from said wells, knowing that the oil was produced from such wells, and encouraged the plaintiff to continue to produce oil from said wells; that the plaintiff relied on these acts of the owners of the land, and acted thereon, and on account thereof said Kirlicks and the other owners of the land are now estopped to deny that the land upon which the plaintiff's wells are located was a part of the land covered by his lease."

Finally, as has been shown in our preliminary statement the judgment was one in the lessee's favor against all of the defendants as lessors of the land, not only for the money value of the oil produced from it, the Texas Company being held merely as an innocent stakeholder, but quieting his title to the leasehold upon the premises as against their claim that it had been invalidated because of his failure to live up to its requirements.

We, therefore, think that defendant in error Decker was in no position to defeat the right of plaintiffs in error to be heard before the jury upon the issues thus tendered in their answers, upon the claim that they did not show sufficient interest in the land covered by the lease, and that, under the circumstances recited, having the right to assert them, their defenses as pleaded would be deemed to be for, and would inure to, the benefit of the owners of the land.

We think the principle that the tenant may not deny his landlord's title is applicable. Fowler v. Simpson, 79 Tex. 617, 15 S. W. 682, 23 Am. St. Rep. 370; Cobb v. Robertson, 99 Tex. 145, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609.

[4] Neither can we agree that the evidence was insufficient to require submission of the question of forfeiture. Upon this feature the lease provided:

"6th. It is further mutually agreed that in case lessee abandons said property; or in case he fails to operate any particular well which is in actual operation on said tract, which is producing either oil or gas, for the period of thirty days, and fails to operate same for said period, unless such failure is unavoidable and is because of broken machinery that cannot by proper care and diligence be sooner replaced or put in order, or because of the wells clogging so as to reasonably require a longer time to clean and put them in order, then this lease and such producing well and the land herein-

above provided to operate it, shall revert to the lessors."

In addition to the previously mentioned and undisputed fact that no well was drilled on any other acre than the first 2, Kirlicks testified that Decker had not only failed for about 90 days to even attempt to operate the wells already drilled upon these 2 acres, but had actually abandoned them, along with the rest of the land, had paid no royalty nor done any work of any sort during that time, and had confessed his inability to develop and operate the property as the lease required, and admitted the resulting forfeiture of all his rights, except as to two producing wells. There was similar proof offered from other sources also.

[5] It may be that the evidence preponderated against a forfeiture, but we think that issue was certainly raised, and the failure to submit it constituted error. Walker v. Finney, 157 S. W. 948; Carter v. South Texas Lumber Yard, 160 S. W. 626; I. & G. N. Ry. Co. v. Williams, 160 S. W. 639; Zimmermann v. Baugh, 161 S. W. 943.

Some of the assignments are objectionable as being multifarious and without supporting statements; but we think others sufficiently raise the questions discussed, and we sustain that much of them without seriatim or more detailed treatment, and, for the errors pointed out, reverse the judgment and remand the cause for another trial.

Reversed and remanded.